UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| MERRI J. PUGH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:20-CV-00045-SPM |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security,[1] | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security (the "Commissioner") denying the application of Plaintiff Merri J. Pugh ("Plaintiff") for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 10). Because I find the decision denying benefits was supported by substantial evidence, I will affirm the Commissioner's denial of Plaintiff's application.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

## I. FACTUAL BACKGROUND

At the hearing before the ALJ, on July 15, 2019, Plaintiff testified as follows. Plaintiff has a G.E.D. and an associate's degree in medical billing. (Tr. 39). She lives with her husband and three children, aged nine, seven, and four months. (Tr. 35-36). Her husband works full-time. (Tr. 37). She and her husband take care of the children, with help from her father-in-law, who lives two blocks away. (Tr. 36). Her father-in-law takes the children to his house three or four times a week, and he comes over to her house to help three or four times a week. (Tr. 37). Plaintiff gets her children off to school and helps with breakfast, and she cooks and cleans, along with her husband. (Tr. 54-55). However, Plaintiff has days where she just lies in bed and barely gets up; on those days, her father-in-law takes care of the baby. (Tr. 45). Most of the time, Plaintiff does not leave her house. (Tr. 50). She generally leaves her house only for shopping (which she does with her husband, because it gives her anxiety to be around a lot of people) and for doctor's appointments. (Tr. 50). However, when school is in session, she often drops her children off at school, and she goes to parent/teacher conferences, school plays, and some sporting events. (Tr. 51-52).

Since she applied for disability benefits in September 2016, she has attempted to work at Subway. However, that job lasted only a week or two, because her boss wanted her to work alone, and she could not. (Tr. 32-33).

The main reason Plaintiff thinks she cannot work is that she has difficulty dealing with other people. (Tr. 70). She does not really have friends and does not really see anyone besides her husband, her father-in-law, and her doctors. (Tr. 70).

Plaintiff has panic attacks three to four times a day, lasting about an hour; when she gets one, she goes into sensory overload, her heart races, she feels nauseated; about twice in a month, she actually vomits. (Tr. 40). When they happen, she goes outside to breathe and calls her father-

2

in-law to help with the children; then she goes and lies down for an hour or two. (Tr. 41). The panic attacks come out of the blue but can also be triggered if she has too many things to do at once or if she hears certain names or phrases. (Tr. 40-41). Plaintiff also gets crying spells about twice a month; they last about 30 minutes to an hour. (Tr. 42). She also has nightmares two or three times a week. (Tr. 43). Plaintiff gets stressed out and overwhelmed if she has something to do, and the children also overwhelm her. (Tr. 46). Plaintiff is not able to finish things she starts, such as housework. (Tr. 47).

The record shows that from 2014 through 2019, Plaintiff sought treatment from a psychiatrist and other providers for her mental symptoms, including anxiety, panic attacks, depression, paranoia, and insomnia; she was diagnosed with conditions including major depression, generalized anxiety disorder, posttraumatic stress disorder, panic disorder, and panic disorder with agoraphobia; and she was prescribed various medications at different times for her mental symptoms, including olanzepine (Zyprexa), ziprasidone (Geodon), lorazepam (Ativan), alprazolam (Xanax), trazodone, sertraline (Zoloft), citalopram (Celexa), and buspirone (Buspar).

The record contains opinion evidence from two sources. First, nonexamining state agency consultant Barbara Markway, Ph.D., reviewed the record in February 2017 and opined that Plaintiff had some moderate limitations in the ability to understand, remember, and carry out detailed instructions; the ability to maintain attention and concentration for extended periods; and the ability to respond appropriately to changes in the work setting. (Tr. 94-95). However, Dr. Markway found that Plaintiff had no significant limitations in most areas of functioning, including the ability to understand, remember, and carry out very short and simple instructions; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to sustain an ordinary routine without special supervision; the

3

ability to work in coordination with or in proximity to others without being distracted by them; the ability to make simple work-related decisions; the ability to complete a normal weekday and workweek without interruptions from psychologically based symptoms; and the ability to interact socially. (Tr. 94-95). She opined that Plaintiff had the residual capacity to follow simple one- and two-step instructions and to perform simple work. (Tr. 92, 95).

Second, the record contains a report from psychological consultative examiner Frank Froman, Ed. D., who examined Plaintiff in February 2019. (Tr. 491-94). Dr. Froman estimated that Plaintiff's IQ was in the low 80s. (Tr. 493). He diagnosed her with ADHD-combined type; borderline personality disorder; panic disorder with agoraphobia; and PTSD. (Tr. 493). He opined that she was "stress sensitive, and in all probability, will have difficulty sustaining a competitive employment situation." (Tr. 493). He found that she could relate to others in a minimalistic way, having no sense of trust or comfort with others. (Tr. 493). He found that she tends to misunderstand, misinterpret, and misperceive the intentions of others; to be uncomfortable around others; and to become easily overwhelmed. (Tr. 494). He found that although she could understand oral and written instructions, she could not manage benefits. (Tr. 493). In his Medical Source Statement, he opined that Plaintiff would have marked or extreme limitations in several areas of functioning, including the ability to understand, remember, and carry out complex instructions; the ability to make judgments on complex work-related decisions; the ability to interact appropriately with the public and supervisors; and the ability to respond appropriately to usual work conditions and to changes in a routine work setting. (Tr. 495-96). He based these limitations on her moderately low cognitive capacity and her high stress sensitivity. (Tr. 495-96).

4

With respect to the remaining medical and other records, the Court accepts the facts as reflected in the parties' respective statements of fact and responses. The Court will discuss specific portions of the record as necessary to address the parties' arguments.

## II. PROCEDURAL BACKGROUND

On November 8, 2016, Plaintiff applied for SSI, alleging that she had been unable to work since March 31, 2013, due to anxiety, panic disorder, paranoia, sleep problems, and depression with psychotic features. (Tr. 200-07, 235). Her application was initially denied. (Tr. 98). On March 13, 2017, Plaintiff filed a Request for Hearing by Administrative Law Judge (ALJ) (Tr. 104-06). On January 7, 2019 and July 15, 2019, the ALJ held hearings on Plaintiff's claim. (Tr. 28-72, 73-86). On August 7, 2019, the ALJ issued an unfavorable decision. (Tr. 7-22). On October 3, 2019, Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council. (Tr. 195-96). On June 15, 2020, the Appeals Council denied Plaintiff's request for review. (Tr. 1-6). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

## III. STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). Under the Social Security Act, a person is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). *Accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but

5

cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. § 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the [twelve-month duration requirement in § 416.909], or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. § 416.920(a)(ii); *McCoy*, 648 F.3d at 611. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. § 416.920(a)(4), which is "the most [a claimant] can still do despite [his or

6

her] limitations," 20 C.F.R. § 416.945(a)(1). *See also Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g), 416.1560(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.960(c)(2).

## IV. THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff has not engaged in substantial gainful activity since September 8, 2016, the application date;[2] that Plaintiff

---

Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The record indicates that the actual application date was November 8, 2016. (Tr. 200-07).

7

had the severe impairments of anxiety with panic attacks, major depression, attention deficit disorder, a borderline personality disorder, and post-traumatic stress disorder (PTSD); and that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (Tr. 12-13). The ALJ found that Plaintiff had the following RFC:

> [Plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels, with the following nonexertional limitations: simple, routine tasks, not at a production rate pace, in an environment with few changes in setting or duties; occasional contact with supervisors and coworkers and no contact with the general public. She should not have to work in crowds and she should not have to work alone.

(Tr. 15). At Step Four, the ALJ found that Plaintiff had no past relevant work. (Tr. 20). However, at Step Five, relying on the testimony of a vocational expert, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 20). The ALJ identified three representative occupations: auto detailer, lab equipment cleaner, and salvage laborer. (Tr. 21). Thus, the ALJ found that Plaintiff has not been under a disability, as defined in the Act, since September 8, 2016, the date the application was filed. (Tr. 22).

## V.    DISCUSSION

Plaintiff challenges the ALJ's decision on two grounds: (1) that the RFC assessment made by the ALJ is not supported by the weight of the evidence; and (2) that the ALJ did not properly evaluate the opinion of consulting examiner Frank Froman.

### A. Standard for Judicial Review

The decision of the Commissioner must be affirmed if it "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Ford v. Astrue*, 58 F.3d 979, 981 (8th Cir.

2008)); *see also* 42 U.S.C. § 1383(c)(3). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942 (quotation marks omitted). *See also Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consol. Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

### B. The RFC Assessment

Plaintiff's first argument is that the RFC assessment is not supported by the weight of the evidence. She suggests that the ALJ did not adequately consider the waxing and waning of her mental symptoms; that ALJs do not have the medical training required to read and understand

9

medical records and form opinions as to residual functional capacity; and that the ALJ improperly made independent medical findings or drew inferences from medical reports.

As discussed above, a claimant's RFC is "the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 416.945. The ALJ determines a claimant's RFC "based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of [his or her] limitations." *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) (quoting *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015))."[T]he RFC determination is a 'medical question' that 'must be supported by some medical evidence of [the plaintiff's] ability to function in the workplace.'" *Noerper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020) (quoting *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017)). However, "the RFC is a decision reserved to the agency such that it is neither delegated to medical professionals nor determined exclusively based on the contents of medical records." *Noerper*, 964 F.3d at 744 (citing *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005)).

After careful review of the record, the Court finds that the ALJ's RFC assessment was supported by substantial evidence. As a preliminary matter, the Court notes that the ALJ included several significant mental limitations in the RFC. It appears that the ALJ accommodated Plaintiff's anxiety when around large groups of people by providing that she should not have to work in crowds; he accommodated her difficulty working alone (her stated reason why she left her most recent job) by providing that she would not have to work alone; he accommodated her difficulties in interacting with people by limiting her to occasional contact with supervisors and coworkers and no contact with the general public; and he accommodated (at least in part) her stress sensitivity and difficulty understanding and following complex instructions by limiting her to simple, routine tasks, not at a production rate pace, in an environment with few changes in setting or duties.

To the extent that the ALJ did not find Plaintiff's impairments would impose additional mental limitations, that conclusion was supported by substantial evidence, including medical evidence.

First, the ALJ reasonably considered the mental status examinations in the record, which generally showed that although Plaintiff was often anxious, depressed, or irritable, she was almost always cooperative, made average eye contact, had a normal appearance, had a full or appropriate affect, had logical and goal-directed thought processes, had normal cognition, had average intelligence, and had intact recent and remote memory. (Tr.18). The ALJ also correctly noted that although Plaintiff reported some paranoia and pathological jealousy early in the relevant period, those symptoms were generally absent after Plaintiff began treatment in 2017. (Tr. 18). The ALJ reasonably found the relatively normal objective findings undermined Plaintiff's allegations that she had symptoms so severe that she would be incapable even of the limited range of work set forth in the RFC. *See, e.g.*, *Halverson v. Astrue*, 600 F.3d 922, 931-33 (8th Cir. 2010) (finding that the ALJ reasonably discounted allegations of disability based in part on unremarkable examination findings).

Second, the ALJ reasonably considered that Plaintiff's own complaints to her health care providers did not reflect the level of symptoms she indicated that she had in her testimony and in her reports to the consultative examiner. (Tr. 18). For example, as the ALJ correctly noted, although Plaintiff testified in March 2019 that she was experiencing panic attacks three to four times a day, panic attacks are only rarely mentioned in her treatment notes. (Tr. 16-18). Additionally, although though she testified that she had depression so limiting that she could not take care of herself or her children, and anxiety so limiting she had difficulty leaving her home,

11

the mental health records do not indicate that she complained of such difficulties to her care providers. (Tr. 18).

Third, the ALJ considered evidence in the record suggesting that some of Plaintiff's mental symptoms improved significantly with medication or other treatment. (Tr. 16-18). For example, Plaintiff was taking Xanax as needed for anxiety, but it was discontinued or reduced because Buspar had improved her anxiety and she was not taking the Xanax very often. (Tr. 447-53). Plaintiff also frequently reported that her panic attacks, paranoia, anxiety, and/or depression improved with medication. (Tr. 392-93, 398-400, 401-03, 404-405, 407-09, 413-15, 447-53, 467-72, 473-78, 479-84, 485-90, 508-12, 514-19). To the extent that Plaintiff's condition was controlled by medication, it cannot be considered disabling. *See Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling.") (quoting *Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995)).

Fourth, the mental RFC finding is supported by the opinion of nonexamining state agency consultant Barbara Markway, Ph.D., who reviewed the record in February 2017 and opined that although Plaintiff had some moderate limitations in the ability to understand, remember, and carry out detailed instructions; the ability to maintain attention and concentration for extended periods; and the ability to respond appropriately to changes in the work setting, Plaintiff had no significant limitations in most areas of functioning and had the residual capacity to follow simple one- and two-step instructions and to perform simple work. (Tr. 92, 95). The ALJ reasonably gave this opinion "partial weight," finding several of Dr. Markway's opinions consistent with the record but finding that the record as a whole, including Plaintiff's testimony and the consultative examination, showed some limits in the ability to interact and with others and to adapt and manage oneself that supported more significant limitations. (Tr. 19). It was appropriate for the ALJ to consider the

12

opinions of Dr. Markway along with the rest of the medical and other evidence in determining the RFC. *See Casey v. Astrue*, 503 F.3d 687, 8, 503 F.3d at 694 ("The ALJ did not err in considering the opinion of [the State agency medical consultant] along with the medical evidence as a whole.").

Fourth, as discussed below, in assessing the RFC, the ALJ reasonably considered the February 2019 opinion of Dr. Froman, the consultative examiner. (Tr. 19). Although the ALJ gave the opinion only "partial weight" and discounted several of the limitations therein, he did include some limitations in Plaintiff's ability to interact with others and to adapt and manage herself, as suggested by Dr. Froman's opinion. (Tr. 19).

The Court is not persuaded by Plaintiffs' specific arguments for reversal. Plaintiff argues that the ALJ did not adequately consider the waxing and waning of Plaintiff's symptoms. As Plaintiff correctly notes, "the instability of mental impairments and their waxing and waning nature after manifestation must be recognized," and "'[a]lthough the mere existence of symptom-free periods may negate a finding of disability when a physical ailment is alleged, symptom-free intervals do not necessarily compel such a finding when a mental disorder is the basis of a claim.'" *Nelson v. Saul*, 413 F. Supp. 3d 886, 919 (E.D. Mo. 2019) (quoting *Andler v. Chater*, 100 F.3d 1389, 1393 (8th Cir. 1996)). In *Nelson*, the court reversed the decision of the ALJ in part because "the ALJ's selective review of the record for positive notations does not consider the possibly waxing and waning nature of plaintiff's mental illnesses." *Id.* In the instant case, however, a review of the ALJ's decision does not suggest that the ALJ selectively reviewed the record for positive notations. To the contrary, the ALJ discussed at length both Plaintiff's positive reports regarding her symptoms and her negative reports (Tr. 16-19), and he expressly found that "[c]learly, her symptoms have waxed and waned over time." (Tr. 20). The record shows that the ALJ reasonably considered the issue of waxing and waning symptoms, and the Court finds no basis for reversal.

Plaintiff also argues that the purposes of medical records are for other doctors and nurses to understand diagnoses and treatment or for documentation of services so that medical providers can be paid, not to note issues related to a patient's functional capacity. Assuming this is true, the Court finds that it does not provide a basis for reversal in this case. It is well established that the ALJ determines a claimant's RFC "based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of [his or her] limitations." *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) (quoting *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015)). The ALJ's assessment of the medical records in this case, along with all of the other evidence, was not unreasonable.

Plaintiff also states that ALJs lack the medical training to read and understand medical records and to form opinions regarding residual functional capacity, and she suggests that the ALJ in this case improperly made his own independent medical findings or drew inferences from medical reports. The Court disagrees. "It is the ALJ's responsibility to determine [a claimant's] RFC based on all the relevant evidence." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted). It was entirely appropriate for the ALJ to discuss and evaluate the objective medical evidence in the medical records in determining Plaintiff's RFC. *See* 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work."). Moreover, the ALJ did not rely solely on his own evaluation of the objective medical evidence; rather, he relied on that evidence along with the opinion evidence, Plaintiffs' treaters' notes with regard to her condition, and Plaintiff's own testimony. Although the RFC assessment does not reflect the limitations in any of the opinions in the record, it is well-established that the ALJ is "not required to rely entirely on a

14

particular physician's opinion or choose between the opinions of any of the claimant's physicians" in determining a claimant's RFC." *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (quotation marks omitted)). *See also Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (noting that "there is no requirement that an RFC finding be supported by a specific medical opinion"). Here, although the RFC did not mirror any of the particular opinions in the record, the record contained opinion evidence regarding Plaintiff's ability to function from multiple sources. The ALJ properly determined Plaintiff's RFC based on all of the evidence.

Plaintiff further argues that the ALJ may not rely exclusively on the opinion of a non-treating, nonexamining physician. Plaintiff is correct that "the opinions of non-treating practitioners who have attempted to evaluate the claimant without examination do not normally constitute substantial evidence on the record as a whole." *Shontos v. Barnhart*, 328 F.3d 418, 427 (8th Cir. 2003). However, such opinions may properly be considered along with the other evidence of record. *See Casey v. Astrue,* 503 F.3d 687, 694 (8th Cir. 2007) ("The ALJ did not err in considering the opinion of [the State agency medical consultant] along with the medical evidence as a whole."). Here, the ALJ did not simply adopt the opinion of Dr. Markway; instead, the ALJ considered it along with the rest of the evidence in the record and made an RFC determination more restrictive than the one in Dr. Markway's opinion.

In sum, although this case involved conflicting medical and non-medical evidence, some of which would have supported an RFC more restrictive than the one found by the ALJ, the Court finds that the RFC assessment was supported by substantial evidence. It is the ALJ's duty to resolve conflicts in the evidence, including medical evidence, and this Court may not substitute its opinion for the ALJ's. The ALJ's weighing of the medical opinion and other evidence here fell

within the available zone of choice, and the Court cannot disturb that decision merely because it might have reached a different conclusion.

### C.  The Opinion of Consultative Examiner Frank Froman

Plaintiff's second argument is that the ALJ did not properly evaluate the opinions of Dr. Froman, the consultative examiner. Because Plaintiff's case was filed in 2016, the evaluation of the opinion evidence in this case is governed by 20 C.F.R. § 416.927. Under that regulation, unless a treating source's medical opinion is given controlling weight, the ALJ is to "consider all of the following factors in deciding the weight we give to any medical opinion": whether the source has examined the plaintiff; the nature and extent of the treatment relationship, if any; the amount of evidence the source provides in support of an opinion; the consistency of the opinion with the record as a whole; the specialization of the source; and other factors. 20 C.F.R. § 416.927(c).[3]

Plaintiff argues the ALJ did not properly apply the criteria of 20 C.F.R. § 416.927(c) in evaluating the opinion of Dr. Froman. The Court disagrees. The ALJ cited the correct regulation (Tr. 15) and reasonably applied it, giving Dr. Froman's February 2019 opinion "partial weight" (Tr. 19-20). The ALJ discussed Dr. Froman's examination findings and opinions in some detail and noted that he was a "consultative examiner," showing that the ALJ considered the fact that Dr. Froman had examined Plaintiff in weighing his opinion. (Tr. 17, 19-20). He discussed several of the other factors as well, including both the extent to which he found Dr. Froman's opinions consistent with the other medical evidence and the extent to which he found those opinions supported by Dr. Froman's own findings. (Tr. 19). For example, in evaluating Dr. Froman's opinion that Plaintiff would have marked limitations in the ability to interact appropriately with

---

[3] In contrast, in the new regulations, the ALJ evaluates the "persuasiveness" rather than the "weight" of medical opinions, and focuses the analysis primarily on the supportability and consistency factors. *See* 20 C.F.R. § 416.920c.

the public and supervisors and to respond appropriately in usual work situations and to changes in a routine work setting, the ALJ reasonably noted that Dr. Froman's own notes—which indicated that Plaintiff was a "slightly anxious, but otherwise normalized individual whose ability to relate was good," with normal speech and eye contact—were more supportive of a moderate limitation than a marked limitation, particularly in light of the other mental status examinations in the record. (Tr. 19, 492). Although the ALJ did not explicitly discuss all of the factors listed in § 416.927(c) in evaluating Dr. Froman's opinion, he was not required to do so. *See Nishke v. Astrue*, 878 F. Supp. 2d 958, 984 (E.D.Mo.2012) (ALJ's failure to perform a factor-by-factor analysis of the 20 C.F.R. §§ 404.1527(c) and 416.927(c) factors was not erroneous when the ALJ "explained his rationale in a manner that allowed the [Court] to follow his line of reasoning."). The ALJ cited 20 CFR § 416.927 in his discussion and discussed several of the factors, including the consistency of Dr. Froman's opinion with the record as a whole, the extent to which his opinions were supported by his own findings, and the fact that Dr. Froman was a consultative examiner. The ALJ also "explained his rationale in a manner that allows the [Court] to follow his line of reasoning" *Nishke*, 878 F. Supp. 2d at 984. No more was required to comply with the relevant regulations.

Plaintiff also argues that § 416.927 "encompasses a pyramid of weight in which an physician who has actually examined an individual is afforded greater weight than an individual who has merely looked at medical records and has had no interaction with the Plaintiff." Pl.'s Br., Doc. 19, at 11-12. Plaintiff is correct that the examining relationship is one factor and that "[g]enerally, [the Commissioner] give[s] more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you." 20 C.F.R. § 416.927(c)(1). But that is not true in every case—the ALJ is directed to consider the other factors as well, and in some instances, may give equal or greater weight to the opinion of a

17

nonexamining source than to an examining or treating source. *See* Social Security Ruling 96-6p, 1996 WL 374180, at *3 (S.S.A. July 2, 1996) ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources."). The Court finds no error in the ALJ's well-reasoned decision to afford "partial weight" to both the opinion of Dr. Froman and the opinion of Dr. Markway.

For all of the above reasons, the Court finds that the ALJ's assessment of Dr. Froman's opinion was supported by substantial evidence and was consistent with the relevant regulations. Because the assessment falls within the available "zone of choice," the Court will not disturb it. *See Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) ("[T]his Court will disturb the ALJ's decision only if it falls outside the available 'zone of choice.'").

### VI.  CONCLUSION

For all of the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 15th day of March, 2022.